### EMERY, Pet'r, v. CHESLEY.

An arrest may be made by an officer without touching the party
    arrested.   It is necessary only that he have the present purpose and
    ability to make the arrest, and that the party know it, and submit.
The court will not grant a review upon petition, unless it appear that
    the party seeking it may prevail in the review, upon legal and equitable
    grounds.

PETITION FOR A REVIEW.   Horace W. Emery, the peti-
tioner, represented that on the 11th day of December,
1845, a writ was, at the suit of James G. Chesley, issued
under the hand and seal of James Tuttle, jr., a justice of
the peace for the county of Strafford, against the peti-
tioner and one Joel Emery, returnable on the 31st day
of January, 1846; that it was placed in the hands of

Nathaniel J. Perkins, a constable of Dover, for service, and that he returned upon the back of it that he had arrested the defendants, and himself became their bail; that the writ was returned and entered, and, the defendants not appearing, their default was entered of record, and the action continued for judgment to the 14th day of February next ensuing; when judgment was rendered against the defendant named in the writ, for $3 damages and $7.94 costs of suit, and execution issued for those sums.

Of all this the petitioner averred that he had no knowledge but so far as he had been informed by others.

He further represented that no service of the writ was made upon him by arresting his body, and that no notice was given him by Perkins of the time at which the writ was returnable to the justice, nor had he any such notice; that the costs were most unjustly increased and illegally taxed, and that "through said false and fraudulent return, as well as by reason of the unjust, oppressive and illegal taxation of costs, justice has not been done, and a further hearing will be both just and equitable."

It appeared, by a copy of the record, that a writ had been issued and returned by the officer, and that judgment had been rendered, as stated in the petition. The costs were taxed as follows:

| Writ and blank, | .67 |
|---|---|
| Service, | 1.00 |
| Entry, | .50 |
| Continuance, | .17 |
| Two travels and attendances, | 1.50 |
| Expense of affidavits, | 4.10 |
| | $7.94 |

William P. Watson testified that on the 18th of January, 1846, Horace W. Emery came to a stable where the

deponent was at work, and engaged a horse and sleigh, to go that evening to Great Falls, to convey him and Joel Emery and a Mr. Davis, who would return with the sleigh; that Horace W. Emery " stated that Nat Perkins came the night before to take him and Joel, but that they gave Nat the slip, and were going away to work. I asked what Nat had against them, and understood it to be a prosecution of Chesley's for staving up a sled of which I had before heard. In the course of our conversation Horace remarked, 'Nat took us, and we made some excuse to go out of the room, and so got away from him.' The horse was returned the same evening."

Nathaniel J. Perkins testified that on the 17th of January, having the writ, he called at the house of Timothy Emery, where he found the defendants named therein, and told them that he had the writ, that it was the last day of service, and that if they did not get bail they must go to gaol, &c.

Horace W. Emery, the petitioner, testified that he had been arrested on a writ for the same cause of action, the December previous, but that the action had been discontinued; that on the 17th of January Perkins called and informed him that he had come on the same business; that he went into the house, and on entering the room where some persons were assembled, remarked to the deponent's mother, that perhaps he should take away two of her boarders; and that was all that was said about the business.

He also testified that he had, in his belief, a good defence to the action.

John Sayles testified that in a conversation with Mr. Guppy, the petitioner stated that Perkins did not arrest him at the time referred to, nor read the writ, nor exhibit the same to him. Mr. Guppy then asked the petitioner if Perkins had not before that time read the writ to him, and if he did not then tell him that it was the last day of

service, and that he must get bail or be committed, and that the petitioner, in reply, admitted such to be the fact. Guppy then asked him if he did not refuse to get bail, and tell Perkins that he was ready to go to goal with him; and the petitioner admitted that he did. Guppy then asked him why he had not gone to goal, and Horace said that he asked Perkins to let him step out of the room for some necessary occasion for a few minutes; that Perkins gave him leave, and that he went out, and, upon the advice of another, omitted to return, &c. The witness understood the petitioner distinctly to acknowledge, in this conversation, that he knew what the writ was for that Perkins had against him. But the petitioner was understood to deny that he had been arrested because the officer had not put his hand upon him.

Benjamin T. Guppy testified to the same facts in substance.

*Soule*, for the petitioner, cited *Pike* v. *Hanson*, 9 N. H. Rep. 491; 11 Mass. 468; 17 Mass. 433; 7 Pick. 577; *Bean* v. *Parker*, 17 Mass. 591; *Whittier* v. *Varney*, 10 N. H. Rep. 391.

*Guppy*, for the defendant.

WOODS, J. A writ was placed in the hands of Perkins, who, on the 17th of January, 1846, made an attempt to serve it by arresting the bodies of the defendants who were therein named; and the principal question that the case presents is, whether he succeeded in making the arrest.

What constitutes an arrest is well described in *Pike* v. *Hanson*, 9 N. H. Rep. 491, which was an action of trespass for making one. "Bare words (it is there said,) will not make an arrest; there must be an actual touching of the body; or, what is tantamount, a power of taking immediate possession of the body, and the party's submission

VOL. XVIII. 14

thereto." Further, "Nor does it seem necessary that there should be any very formal declaration of an arrest. If the officer goes for the purpose of executing his warrant; has the party in his presence and power; if the party so understands it, and, in consequence thereof, submits, and the officer in the execution of the warrant takes the party before a magistrate, or receives money or property in discharge of his person, we think it is in law an arrest, although he did not touch any part of the body."

In brief, if the intention to make an arrest, and the power of doing so in form, coëxist, and are made known to the party who does not resist, then an arrest is made, and no more is required.

It appears very clearly, from the testimony of the petitioner himself, that the officer intended to make an arrest; that he had the power of doing so, and that while he had that power he communicated to the petitioner his purpose, and made known to him the nature of the process, or at least the cause of the prosecution or action.

The petitioner does not assume to relate what followed, but from other testimony it appears that he did not resist the process, but, on the contrary, obtained permission of the officer to withdraw for a few minutes, thus recognizing his relation of prisoner.

The petitioner says that the officer had previously arrested him on a similar process, for the same cause of action; that the action had been discontinued, and that the officer, on calling, remarked that he had come on the same business; that he had come to take away two of the family. He does not pretend that he had a doubt of·the officer's purpose to hold him as a prisoner, or that he resisted, or could have resisted the execution of such a purpose.

The evidence which bears directly upon this point, besides the testimony of the petitioner, is very full and

explicit; and although the officer does not state, in his deposition, all that is admitted by the petitioner in his conversation with Mr. Soule, to have occurred on the day of the alleged arrest, there is no reason for doubting that the admissions were made as stated in the testimony of Mr. Soule and Sayles, or that the admissions themselves were true. The testimony of Watson goes far to confirm their truth. He testifies to the language used by the petitioner the day after the occurrence, when its particulars were distinctly impressed on his mind, and when, as in the other conversation proved, there existed no motive on his part for making the representations that he did make, if they were untrue.

This evidence proves, beyond controversy, that an arrest was made, and thus the material *gravamen* stated in the petition is disproved.

If the petitioner had no actual notice of the return day, or of the nature of the action, or of any other particulars that it behooved him to know, it was his own fault. He escaped from the officer, and thus declined the means which were afforded him to gain the information, and rendered it impossible for the officer to impart it, had his duty required him to do so.

But, independently of the failure of the petitioner to establish his case in this particular, there is another objection, which is always regarded as fatal. The court will not interpose upon a petition for a new trial, unless it appear that justice requires such interposition. It does not appear, and it is not even alleged in the petition, that the petitioner had a defence to the action. He states in his affidavit that he had one, without stating its nature, and in his petition simply states that a further hearing will be both just and equitable. This is wholly insufficient. Nothing appears by which the court can judge whether any substantial defence could be made by the petitioner upon a new trial, nor, of course, whether such

a defence could be made, as equity and good conscience require that he should have an opportunity to make. The petitioner does not deny that there was a good cause of action against him.

If the officer made a false return, or if the service made were insufficient in any particular, the remedy lies open to the parties aggrieved, without the summary aid of the court invoked by the petition.

*Petition dismissed.*